UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

------------------------------------------------------------ X

| | |
|---|---|
| **IN RE YASMIN AND YAZ (DROSPIRENONE) MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | 3:09-md-02100-DRH-PMF<br><br>MDL No. 2100 |

------------------------------------------------------------

**This Document Relates to:**

*Gail Gannon v. Bayer Healthcare Pharmaceuticals, Inc., et al.* No. 3:13-cv-10143-DRH-PMF

**Judge David R. Herndon**

### ORDER

**HERNDON, District Judge:**

### I.   INTRODUCTION

Before the Court is defendant Teva Pharmaceuticals USA's ("Teva") motion, pursuant to Federal Rules of Civil Procedure 12(c) and 56, to enter judgment in its favor on plaintiff's claims (Doc. 33) and memorandum of law in support thereof (Doc. 34). Plaintiff has filed a response in opposition (Doc. 39), to which defendant has replied in accordance with Local Rule 7.1(c) (Doc. 40). Teva contends plaintiff's claims are preempted under federal law and Teva otherwise is entitled to judgment. For the following reasons, Teva's motion is **GRANTED**.

## II. BACKGROUND

On July 24, 2013, Teva filed a motion in 32 cases, including the above captioned case, seeking leave to file a motion for judgment on the pleadings directed to all claims against them asserting liability for injuries arising from ingestion of Gianvi (Doc. 8). Teva asserted the plaintiffs' claims were preempted under *Bartlett* and *Mensing* (Doc. 8). The Court granted leave on July 30, 2013 (Doc. 9). Thereafter, on August 27, 2013, the plaintiffs sought leave to file amended complaints (Doc. 12). Teva filed a response in opposition (Doc. 15) and the plaintiffs replied (Doc. 16). The Court allowed plaintiffs until September 30, 2013 to file amended complaints (Doc. 17). Further, the Court directed that after September 30, 2013, Teva could proceed with filing its motions to dismiss (Doc. 17).

In the instant case, plaintiff filed an amended complaint (Doc. 20). Teva filed its initial motion for judgment on the pleadings on November 14, 2013 (Doc. 23). On April 24, 2014, the Court granted in part and denied in part Teva's initial motion for judgment on the pleadings (Doc. 30) ("April Order).

In the Court's April Order, the undersigned granted Teva's motion for judgment on the pleadings as to Count III (Defect Due to Inadequate Warning) finding that this claim was preempted by federal law. The Court declined to dismiss the following claims: Count I Strict Products Liability (Defective Manufacturing); Count IV (Negligence and Negligent Misrepresentation); Count VI

(Fraud and Misrepresentation); Count VIII (Breach of Express Warranty); and Count IX (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act). As to these claims, the Court found Teva failed to meet its burden of proof with regard to federal preemption and further explained as follows:

> Teva merely asks the Court to construe all of the plaintiff's claims as failure to warn claims and to conclude that the claims are preempt under *Mensing*. This is not sufficient, in order to meet its burden, Teva must identify the state law duties associated with the remaining causes of action and provide the Court with an analysis of how those duties conflict with federal law.

(Doc. 30 p. 23).

The Court also declined to dismiss Count II of the plaintiff's complaint (Design Defect). The Court recognized *Bartlett* held state-law design defect claims are preempted. However, the Court denied Teva's motion as to the plaintiff's design defect claim "to the extent that the claim parallels the federal misbranding statute" (Doc. 30 p. 22). The Court's decision as to this claim was based on an apparent exception in *Bartlett* relating to claims that parallel the federal misbranding statute.

On May 29, 2014, Teva sought leave to file an additional dispositive motion (Doc. 30). The Court granted leave and Teva filed the present motion on January 23, 2015 (Doc. 33 and Doc. 34).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings. *Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998). In reviewing a Rule 12(c) motion, a court applies the same standards applicable to a Rule 12(b)(6) motion seeking dismissal for failure to state a claim. *See Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, a court accepts as true all well-pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 718–719 (7th Cir. 2002) (*citing N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998)). Although the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

If the Court considers evidence outside the pleadings, a motion for judgment on the pleadings is treated as one for summary judgment. FED. R. CIV. P. 12(d). However, a district court may take judicial notice of matters of public record without converting a Rule 12 motion into a motion for summary judgment. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir.2000).

## IV.   ANALYSIS

**A. Teva is Entitled to Judgment on the Pleadings as to Count II (Design Defect); Count IV (Negligence and Negligent Misrepresentation); Count VI (Fraud and Misrepresentation); Count VIII (Breach of Express Warranty); and Count IX (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**

**1. Count II - Design Defect**

As noted above, in the Court's April Order, the undersigned recognized *Bartlett* held state-law design defect claims are preempted. However, the Court denied Teva's motion as to the plaintiff's design defect claim "to the extent that the claim parallels the federal misbranding statute" (Doc. 30 p. 22). The Court further

noted that a parallel misbranding claim must be based on scientific information that was not available when the drug was approved by the FDA.

The Courts decision with regard to the viability of parallel misbranding claims was premised on a footnote (hereinafter "Footnote 4") found in *Mutual Pharmaceutical Co., Inc. v. Bartlett,* 133 S. Ct. 2466 (2013). Footnote 4, provides as follows:

> We do not address state design-defect claims that parallel the federal misbranding statute. The misbranding statute requires a manufacturer to pull even an FDA-approved drug from the market when it is "dangerous to health" even if "used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C. § 352(j); *cf. Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005) (state-law pesticide labeling requirement not pre-empted under express pre-emption provision, provided it was "equivalent to, and fully consistent with, [federal] misbranding provisions"). The parties and the Government appear to agree that a drug is misbranded under federal law only when liability is based on new and scientifically significant information that was not before the FDA.
>
> Because the jury was not asked to find whether new evidence concerning sulindac that had not been made available to the FDA rendered sulindac so dangerous as to be misbranded under the federal misbranding statute, the misbranding provision is not applicable here. *Cf.* 760 F.Supp.2d 220, 233 (D.N.H.2011) (most of respondent's experts' testimony was "drawn directly from the medical literature or published FDA analyses").

*Id.* at 2477 n. 4.

In light of the above, the Court then considered whether plaintiff's design defect claim, viewed under the guise of a federal misbranding claim, could survive Teva's motion for judgment on the pleadings. The Court concluded the claim

could proceed to the extent it paralleled a federal misbranding claim. The Court's decision was grounded on (1) the assumption that the plaintiff had pled a viable state law design defect claim identical to a federal misbranding claim and (2) the finding that plaintiff's design defect claim included sufficient allegations regarding new information not previously made available to the FDA.

Approximately two months after this Court's April Order, in *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, *928* (6th Cir. 2014) the Sixth Circuit Court of Appeals considered whether a state parallel misbranding claim escapes preemption in relation to *Bartlett* and Footnote 4. Initially, the Sixth Circuit acknowledged the confusion surrounding Footnote 4. *Id.* at 929 ("Academics, commentators, and even the parties to this case are not clear on what precisely Footnote 4 means and what its impact might be."). The Sixth Circuit then went on to address Footnote 4's genesis and explained as follows:

> In *Bartlett*, the FDA argued in an amicus brief that *Mensing's* preemption analysis applied only to claims that turn on the adequacy of the drug labeling. The FDA distinguished those claims from "pure" design defect claims, which it argued are preempted unless they "parallel the FDCA's drug 'misbranding' prohibition." FDA Br., Bartlett, 2013 WL 314460, at *23 (citation omitted). The FDA continued: "[A] manufacturer has a federal duty not to market a drug if, *inter alia*, it is 'dangerous to health' when used as provided in the labeling. A state-law duty not to market the drug in the same circumstances would not conflict with federal law if it appropriately accounted for [the] FDA's role under the FDCA." *Id*. The *Bartlett* Court responded to this argument in Footnote 4, remarking that its holding "[does] not address state design defect claims that parallel the federal misbranding statute." *Bartlett*, 133 S.Ct. at 2477 n. 4. It is

>not clear whether this language implies that an exception for "parallel misbranding" claims actually exists.

*Id*. Ultimately, the Sixth Circuit declined to address whether the language in Footnote 4 implies that an exception for "parallel misbranding" actually exists. Instead, the Sixth Circuit concluded, to the extent a claim for parallel misbranding does exist, the plaintiffs failed to properly plead such a claim. *Id.* In conducting its analysis, the Sixth Circuit explained that if a parallel misbranding claim does exist, in order to avoid preemption, a plaintiff must:

>(1) allege a cause of action for misbranding under state law, (2) identify the 'new and scientifically significant information that was not before the FDA,' and (3) demonstrate that the FDA would have found the drug to be misbranded in light of this new information in order to "appropriately account for the FDA's role under the FDCA."

*Id*. at 929 (*quoting* FDA Br*., Bartlett,* 2013 WL 314460 at \*24*; Bartlett,* 133 S.Ct. at 2477 n. 4*.*)

Here, Teva contends the background of Footnote 4 demonstrates the assumption underlying the Court's April Order, that *Bartlett* allowed an exception for parallel misbranding claims, is without foundation. Additionally, Teva contends, even if such an exception existed, Teva would still be entitled to judgment on plaintiff's design-defect claim because (1) if such an exception exists, it only applies to "pure" design defect claims that parallel the federal misbranding statute and (2) there is no "pure" design defect claim in Illinois. Finally, Teva argues, assuming *Bartlett* allows an exception for parallel misbranding claims and assuming the plaintiff has pled a viable state law design defect claim that is identical to a federal misbranding claim, Teva is still entitled to judgment because

plaintiff cannot establish her claim is based on scientific information that was not available to the FDA. With regard to this final point, Teva relies on various public records and asks the Court to take judicial notice of the same.

The Court acknowledges the background of Footnote 4 raises a legitimate question as to whether *Bartlett* indicates an exception for "parallel misbranding" claims actually exists. However, the Court need not resolve that issue in the present case. After reviewing the briefing and relevant authority, the Court agrees with Teva's position as to "pure" design defect claims. Assuming *Bartlett* allows an exception for parallel misbranding claims, the exception only applies to "pure" design defect claims *i.e.* design defect claims that do *not* turn on the adequacy of drug labeling.

Despite the plaintiff's arguments to the contrary, the Court finds that plaintiff cannot assert a "pure" design defect claim under Illinois law. Illinois has adopted comment k of the Restatement (Second) of Torts § 402A, whereby a drug is not defectively designed if it is "unavoidably unsafe and is properly prepared and there are adequate warnings." Accordingly, the viability of plaintiff's design defect claim necessarily turns on the adequacy of the subject drug's labeling. The Supreme Court has held that a claim of this nature is preempt. *Mensing,* 131 S. Ct. at 2574, 2578; *Bartlett,* 133 S. Ct. at 2476.

Because the plaintiff's design defect claim necessarily turns on the adequacy of Gianvi's product labeling, the claim is preempted under *Mensing* and

*Bartlett*.[1] Accordingly, Teva's motion for judgment on the pleadings as to this claim is **GRANTED.**

The Court's preemption finding negates any need to assess matters pertaining to scientific information allegedly not made available to the FDA. Additionally, as is discussed more fully below, it moots the plaintiff's request for time to conduct additional discovery on this matter.

Plaintiff's additional arguments regarding "unique" circumstances and other possible "theories" are an attempt to insert allegations and theories not previously asserted or already rejected by the Supreme Court. At this late date, the plaintiff's request to amend her complaint is **DENIED**.

### 2. Plaintiff's Remaining Warning-Based Claims

Despite the plaintiff's arguments to the contrary, the motion presently before the Court demonstrates that Count IV (Negligence and Negligent Misrepresentation); Count VI (Fraud and Misrepresentation); Count VIII (Breach of Express Warranty); and Count IX (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act) are all premised on alleged misrepresentations or inaccuracies in Gianvi's labeling. As such, these claims are preempted by federal law under *Bartlett* and *Mensing*.

---

[1] As noted in Teva's briefing, plaintiff cannot pursue a claim under 410 ILCS § 620/3, *et seq.* because this statute does not provide for a private right of action.

As set forth in Teva's briefing, plaintiff's fraud, negligence, and misrepresentation claims (Counts IV and VI) are premised on misrepresentations or inadequacies in Gianvi's labeling, promotions, and advertisements. As such, Teva could only avoid liability as to these claims by unilaterally strengthening their warning labels in violation of federal law or by leaving the marketplace altogether. *Mensing* and *Bartlett* establish that such challenges to Gianvi's labeling are preempted.

At this late date, the plaintiff's request for leave to amend her complaint to allege Teva made false or misleading misrepresentations to her prescribing physician, apart from any communications contained in the product label (or to conduct discovery regarding the same) is **DENIED**.

Plaintiff's express warranty claim fairs no better (Count VIII). An express warranty is an affirmation of fact that becomes part of the basis of the bargain between the parties. *See, e.g., Medline Indus., Inc. v. Ram Med., Inc.*, 892 F. Supp. 2d 957, 968 (N.D.Ill. 2012) (Lefkow, J.) (*citing Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors Am., Inc.*, 372 Ill. App. 3d 354, 865 N.E.2d 334, 340 (Ill. App. 2007)). Accordingly, the seller's duty is to provide accurate information. This duty implicates Gianvi's labeling. Accordingly, plaintiff's express warranty claim is preempted. *See, e.g., Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1287-88 (10th Cir. 2013) (affirming dismissal of express warranty claim, noting "[k]ey to the *Mensing* decision was FDA's broad definition of 'labeling'" and holding there was no mechanism by "which [the generic drug manufacturer] could have modified or

supplemented the warranties allegedly breached without running afoul of the duty of sameness identified in *Mensing*").

Plaintiff alleges Teva violated the Illinois Consumer Fraud & Deceptive Practices Act, 815 ILCS § 505/1, et seq. (the "ICFA") (Count IX) "by the use of false and misleading misrepresentations or omissions of material fact" and by "communicat[ing] the purported benefits of Yaz®/Gianvi® while failing to disclose the serious and dangerous side effects related to the use of Yaz®/Gianvi® to consumers and healthcare providers." (Doc. 20 ¶¶200, 201).[2] As detailed in Teva's briefing, plaintiff's ICFA claims are premised on alleged misrepresentations or omissions of fact regarding Gianvi contained in the product's labeling. These claims necessarily turn on Teva's alleged duty to either provide labeling with different or additional information or to stop selling Gianvi. Thus, plaintiff's ICFA claim is preempted by federal law under *Mensing* and *Bartlett.*

Accordingly, Teva's motion for judgment on the pleadings as to these claims is **GRANTED.**

### B. Teva is Entitled to Summary Judgment on Plaintiff's Manufacturing Defect Claim

Teva does not argue plaintiff's manufacturing defect claim is preempted. Instead, Teva contends it is entitled to summary judgment on plaintiff's manufacturing defect claim because there is no evidence supporting such a claim.

---

[2] To prevail on an ICFA claim, plaintiff must establish: (1) a deceptive act or practice, (2) intent that plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to her (5) proximately caused by the deception. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180 (Ill. 2005).

Specifically, Teva notes the plaintiff admits as follows in her sworn Plaintiff Fact Sheet: (1) neither she nor her attorneys have the packaging from the Gianvi product she allegedly used; (2) she does not know the lot number(s) for any of the Gianvi she received; and (3) she does not know the expiration date for any of the Gianvi she received. Further, plaintiff does not allege that she has any of the Gianvi pills or that any of the pills were tested and shown to "deviate from product specification." (Doc. 35-3).

Plaintiff does not dispute these admissions. Instead, plaintiff notes that her pharmacy records (obtained by Teva during discovery) have revealed the national drug code number of the Gianvi plaintiff used at the time of her injuries. The plaintiff states she should be permitted to conduct discovery with regard to the manufacturing process to support her claim.

"A manufacturing defect occurs when one unit in a product line is defective." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill.App.3d 490, 342 Ill.Dec. 210, 932 N.E.2d 101, 108 (2010), *citing Blue v. Envtl. Eng'g, Inc.*, 215 Ill.2d 78, 293 Ill.Dec. 630, 828 N.E.2d 1128, 1137 (2005). "Generally speaking, manufacturing defects result from qualities of a product not intended by the manufacturer." *Mech. Rubber & Supply Co. v. Caterpillar Tractor Co.*, 80 Ill.App.3d 262, 35 Ill.Dec. 656, 399 N.E.2d 722, 723 (1980).

This Court agrees with Teva; the plaintiff has not come forward with *any* evidence that the Gianvi she ingested deviated in any way from its intended

design. As noted above, it is undisputed the plaintiff no longer has the product. Accordingly, the plaintiff does not have any direct evidence of a manufacturing defect. The lack of direct evidence, however, is not dispositive. *See DiCosolo v. Janssen Pharmaceuticals, Inc.,* 351 Ill.Dec. 574, 951 N.E.2d 1238 (2011) ("Illinois courts have acknowledged that the unavailability of the product does not preclude a plaintiff from proving that a product was defective through circumstantial evidence."). A plaintiff may also rely on circumstantial evidence, including expert testimony to establish a manufacturing defect. *See Id.* at 1247 ("The plaintiff may rely on direct or circumstantial evidence to establish his case or on expert testimony …; indeed, expert testimony is merely one kind of circumstantial evidence.").

Here, the plaintiff has not come forward with any circumstantial evidence establishing a manufacturing defect and her admissions indicate that she cannot come forward with any such evidence. For instance, the plaintiff has no information regarding the lot number of the product she ingested. Thus, unlike the plaintiff in *Dicosolo,* she cannot demonstrate the drug she ingested came from a lot of drugs that had been subject to a recall. The plaintiff also has not presented any expert that would support her manufacturing defect claim. There is simply no evidence in the record, direct or circumstantial, supporting a manufacturing defect claim and the plaintiff's own admissions indicate that no such information is available.

Accordingly, Teva's motion for summary judgment, as to the plaintiff's manufacturing defect claim is **GRANTED.**

### C. Plaintiff's Rule 56(d) motion

The plaintiff's response in opposition includes a motion, pursuant to Rule 56(d), asking the Court to defer ruling on Teva's summary judgment motion and requesting additional discovery (Doc. 39 § II). Under Rule 56(d) "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d). Rule 56(d) "is intended as a safeguard against a premature grant of summary judgment." *King v. Cooke*, 26 F.3d 720, 726 (7th Cir.1994).

Plaintiff states that for reasons of "judicial economy" she has been "hesitant to engage in discovery against generic defendants." (Doc. 39 p. 4). She further states that although she anticipated a possible renewed motion for judgment on the pleadings, she did not anticipate a motion for summary judgment at this stage in the litigation (Doc. 39-1 ¶ 8, Affidavit of Roger Denton). Plaintiff's motion states she would seek the following in discovery:

> Corporate Representative depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and related document requests on the following topics: (1) Teva's corporate structure; (2) Teva's manufacturing, sale, and promotion of Gianvi; (3) contractual agreements between Teva and Bayer; (3) Teva's involvement in clinical trials related to drospirenone; and (4) Teva's knowledge of

>scientific studies showing increased risk of drospirenone and related communications with the FDA.

(Doc. 39 p. 5).

Plaintiff cannot establish that she is entitled to Rule 56(d) relief. Rule 56(d) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984). In other words, Rule 56(d) requires a party opposing summary judgment to do more than request a "fishing expedition" in the hope of finding evidence sufficient to establish the existence of a genuine issue of material fact. *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 885 (7th Cir. 2005). Rule 56(d) places the burden on the nonmovant opposing summary judgment to "state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). If the reasons identified by the non-movant are not material to the summary judgment ruling, and the district court's decision would not differ if discovery were conducted, a district court is within its discretion to deny the Rule 56(d) motion. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014).

In the instant case, with the exception of plaintiff's manufacturing defect claim, the Court's analysis is purely legal. As to all but the manufacturing defect claim, Teva has identified the relevant state law duties and provided the Court with an analysis of how those duties conflict with federal law. The Court's purely

legal analysis with respect to these claims moots any request for additional discovery as to the same.

As to the plaintiff's manufacturing defect claim, the discovery requested in plaintiff's Rule 56(d) motion is wholly irrelevant. As is discussed above, the material issue in the plaintiff's manufacturing defect claim is whether the plaintiff has come forward with evidence, direct or circumstantial, of a manufacturing defect. Plaintiff fails to detail how the specified discovery would assist in this regard. Although not mentioned in plaintiff's Rule 56(d) motion, plaintiff's response states she "should be permitted to conduct discovery with regard to the manufacturing process to support her defective manufacturing claim." This generic request is no more than a fishing expedition and does not warrant Rule 56(d) relief.

To the extent that other requests for additional discovery are peppered throughout the plaintiff's briefing, these requests likewise do not meet the requirements for Rule 56(d) relief.

### D. Permission for Filing a Motion for Summary Judgment

The Court's initial case management order in MDL-2100 provides "No motion shall be filed under Rule 11, 12 or 56 without leave of court and unless it includes a certificate that the movant has conferred with opposing counsel in a good-faith effort to resolve the matter without court action." Initial Conference Order, ¶ 5(d). With regard to the instant motion, Teva sought leave "to file an additional dispositive

motion seeking dismissal of all claims remaining against it in this case." (Doc. 31). Leave was granted on September 29, 2014 (Doc. 32). Plaintiff contends Teva only sought leave to file a motion for judgment on the pleadings and did not seek leave to file a Rule 56 motion. Accordingly, plaintiff objects to allowing Teva to proceed on its motion for summary judgment.

While Teva's motion only sought leave to file a motion for judgment on the pleadings, there is no unfair surprise with regard to Teva filing a joint motion for judgment on the pleadings and for summary judgment. This MDL was created in 2009 (plaintiff's counsel serves as liaison counsel for MDL 2100). The Court is confident, based on the numerous status conferences it has overseen in the last six years, that during this time period the parties conferred on the issues raised in Teva's motion and were prepared to address the same. Further, the purpose of the Court's directive was to ensure that the parties attempted to resolve certain matters prior to seeking a resolution from the Court. For reasons already stated, the Court is confident that this occurred. Accordingly, the plaintiff's objection on this issue is overruled.

## V. CONCLUSION

For the reasons discussed herein, the Court **GRANTS** summary judgment in favor of Teva as to Count I Strict Products Liability (Defective Manufacturing). For the reasons discussed herein and in the Court's April Order (Doc. 30) the Court **GRANTS** Teva's motion for judgment on the pleadings as to all remaining claims. As all claims against Teva have been dismissed with prejudice, Teva will be

terminated from the above captioned action.

**IT IS SO ORDERED.**

Signed this 18th day of November, 2015.

Digitally signed by Judge David R. Herndon
Date: 2015.11.18 12:35:15 -06'00'

**United States District Judge**